### HALEY v. SHERIDAN et al.

(Supreme Court, Appellate Division, First Department. July 7, 1905.)

ALIENS—CAPACITY TO TRANSMIT LAND.

Laws 1893, p. 365, c. 207, removed the disability of aliens to inherit and transmit real property. This act was repealed by the real property law (Laws 1896, p. 560, c. 547), sections 2 and 3 of which permit citizens of the United States to hold land, and authorize all persons other than minors and idiots having an estate in land to convey the same. Section 5, p. 561, provides that an alien may, for a term of six years after filing a deposition of intention to become a citizen, take, hold, convey, and devise real property. Section 6, p. 561, provides that foreign-born children of a woman who is born a citizen, but who marries an alien, may take, convey, and devise real property. Section 7, p. 561, provides that the right of any person entitled to hold land cannot be questioned or impeached by reason · of the alienage of any person through whom such title may have been derived. Section 281, p. 619, prescribes the general rule of descent by inheritance. Section 294, p. 621, provides that a person capable of inheriting shall not be precluded from his inheritance by reason of the alienism of an ancestor. Section 5a (Laws 1897, p. 706, c. 593) provides that any

citizen of a nation which by its laws confers similar privileges on citizens of the United States "may take, acquire, hold and convey lands" within this state in the same manner as if such person were a citizen of the United States. *Held*, that an alien who is within the provisions of section 5a may "transmit" by descent and inheritance his interest in lands, to his heirs.

[Ed. Note.—For cases in point, see vol. 2, Cent. Dig. Aliens, §§ 21–29.]

O'Brien, J., dissents.

Appeal from Special Term, New York County.

Action by Annie C. Haley against Annie Sheridan and others. From the judgment rendered, certain defendants appeal. Modified.

Argued before O'BRIEN, P. J., and McLAUGHLIN, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

Henry Melville, for appellants.
Lewis Ogden O'Brien, for respondent.

INGRAHAM, J. This action was brought to partition certain real property of which one Mary McArdle, a citizen of the United States, was seised. She died intestate on the 5th day of November, 1903, leaving as her next of kin and heirs at law an aunt, Annie Sheridan, an uncle, James Tully, and three cousins, who were the children of a deceased uncle. There is no dispute but that an undivided third of the real property vested in the uncle of the said Mary McArdle, James Tully. At the time of the death of Mary McArdle, James Tully was an alien, a citizen and subject of Great Britain, residing in Ireland, and was never in the United States. James Tully died on March 5, 1904, about four months after the death of Mary McArdle, leaving, him surviving, a daughter, the defendant Margaret Kerr, and a widow, the defendant Mary Tully. James Tully's widow is an alien, a citizen of and residing in Ireland; but Margaret Kerr, daughter of James Tully, became a citizen of the United States by the naturalization of her husband on December 11, 1903, before the death of James Tully. The court held that although an undivided third of this property vested in James Tully upon the death of Mary McArdle, his heir at law, although a citizen of the United States, could not inherit, and that therefore the undivided third of the property escheated to the people, and that the state of New York is therefore seised in fee of an undivided one-third interest in the premises.

The question here presented depends upon the provisions of sections 5, 5a, and 7 of the real property law (chapter 547, p. 561, of the Laws of 1896, as amended by chapter 593, p. 706, of the Laws of 1897). By chapter 207, p. 365, of the Laws of 1893, the disability of an alien to inherit real property from a citizen of the United States was removed, and such a person could, notwithstanding the fact that he was a nonresident alien, "take, hold, enjoy, convey, transmit and devise real property as if he was a citizen." This act was repealed by the real property law, and the subject was covered by that act; but in considering the provision of the real property law, it is important to bear in mind that the act which it repealed, and whose place it took, substantially removed all restrictions upon

the power of an alien to inherit or transmit real property, and allows such an alien to hold, enjoy, convey, transmit, and devise an interest in real property in the same manner and to the same extent and to the same effect as if he was himself a citizen of the United States, notwithstanding the fact that he was a nonresident alien. Section 2 of the real property law regulates the holding and taking of real property, and applies only to citizens. That section provides that a citizen of the United States is capable of holding real property within this state, and of taking the same by descent, devise, or purchase. Section 3 provides, not for the capacity to take, but for the capacity to transfer, and applies to all persons other than minors, idiots, or persons of unsound mind. Thus any person who is legally seised of or entitled to an estate or interest in real property has authority to transfer such estate or interest. This provision seems to have been taken from Rev. St. (1st Ed.) pt. 2, c. 1, tit. 1, § 10, p. 719, which provided that a person capable of holding lands, other than a minor, etc.; the words "capable of holding lands" being omitted on the revision, so that now any person other than a minor or idiot, or person of unsound mind, who is seised of or entitled to an estate or interest in real property, may transfer such estate or interest. Section 5 of the real property law provides that an alien may, for a term of six years after filing the deposition prescribed in section 4 of the act, "take, hold, convey and devise real property," provided that this deposition be filed or the alien be admitted to citizenship within one year after the death of the testator. The section then provides that if a person who has filed such deposition dies within six years thereafter, and before he has been admitted to citizenship, his widow is entitled to dower in his real property, and, if he dies intestate, his heirs, or the persons who would otherwise answer to the description of heirs, inherit his real property, upon such persons being admitted to citizenship or filing a deposition in their own behalf within one year after such death; and then section 7 provides that "the right, title or interest in or to real property in this state of any person entitled to hold the same, cannot be questioned or impeached by reason of the alienage of any person through whom such title may have been derived."

By these three sections of the real property law, as originally enacted, an alien was given the power to take, hold, devise, and convey real property for six years after he acquired title, provided that he made the declaration required by section 4 within one year after acquiring such title, and, upon his death within six years without being naturalized, his widow was entitled to dower, and his heirs entitled to inherit, although nonresident aliens, on filing the declaration within one year after his death. If within six years after a nonresident alien had inherited real property he became a citizen of the United States, a grant, demise, contract, or mortgage of real property to him became as valid and effectual as if made after he has become a citizen; and he would take the fee, with full power to transmit or transfer, under the provisions of section 3. By chapter 593, p. 706, of the Laws of 1897, a new section was enacted, which gave to the citizen of any other country that allowed

the citizens of the state of New York to take, hold, and transfer real estate similar privileges in this state; and it seems to me that the clear intention of the Legislature was to give citizens of a foreign country giving to citizens of this state a privilege to acquire and hold real estate a similar right in this state; and, as an essential element of that right was the power to transmit, a person inheriting real property in this state under the provisions of section 5a would necessarily be entitled to transmit as well as convey. When a citizen of a nation which by its laws conferred a privilege on citizens of the United States to take, acquire, hold, and convey lands within such foreign state, then the people of the state of New York gave to citizens of that state the right to take, acquire, hold, and convey lands within this state in the same manner and with the same effect as if such persons were at the time citizens of the United States. By virtue of this provision the citizens of such foreign state became seised of or entitled to the lands which under this provision they had acquired, and such a person acquired under section 3 power to transfer such estate or interest.

I think it is too narrow a construction of these provisions to say that, because in section 5a the word "transmit" is not included, it was intended to limit the interest of a citizen of a foreign state to holding and conveying. It is conceded that under this section James Tully, the father of Margaret Kerr, the appellant, inherited from Mary McArdle an undivided third part of this property. He thus became seised of and entitled to that undivided third, and upon his death Margaret Kerr, a citizen of the United States, was his heir at law. There is no question that, if James Tully had been a citizen of the United States, Margaret Kerr would have inherited his interest in this property; and then section 7 of the act applies, and the right, title, and interest of Margaret Kerr in this property cannot be questioned by reason of the fact that her father was an alien.

There are no authorities in this state which present this question under the real property law, and I have not cited the authorities under the law in force prior to the enactment of that law; but in determining the meaning that was intended to be given by section 5a to the words "take, acquire, hold and convey lands within this state," we may consider the provisions of section 6 of the act. That section provides for the case of a woman who is born a citizen of the United States, but who marries an alien; and it is there provided that the foreign-born children of such woman shall, notwithstanding their residence or birth in a foreign country, be entitled to take, hold, convey, and devise real property situated within this state in like manner and with the like effect as if such woman and such foreign-born children and descendants were citizens of the United States. It is quite clear that in this section it was intended to give to the children of such a foreign-born woman the absolute title to the property, including a right to transmit by inheritance, and this construction is confirmed by sections 281 and 294 of the real property law.

It is not disputed but that the kingdom of Great Britain and Ireland, of which James Tully was a citizen and resident, conferred upon citizens of the United States the privilege to acquire and transmit by inheritance real property within the United Kingdom; and I am clearly of the opinion that, under the law of this state, James Tully had an equal right to acquire and transmit real property in this state, and that Margaret Kerr inherited the one-third interest in this property, subject to her mother's dower. If this view is correct, it follows that the judgment appealed from must be modified by providing that the state of New York took no interest in this property, and that an undivided third of the estate vested in Margaret Kerr upon the death of James Tully, subject to the dower of her mother, the defendant Mary Tully.

As there is no dispute about the facts, the judgment should be modified accordingly, with costs to the appellants. All concur, except O'BRIEN, J., who dissents.